DECISION AND JUDGMENT ENTRY
This is an appeal from judgments of the Lucas County Court of Common Pleas, Juvenile Division, which found appellant, Jeromie D. to be a delinquent child by committing acts which, if committed by an adult, would constitute assault, theft and resisting arrest. From those judgments, appellant raises the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT DENIED A COMPETENCY EVALUATION OF JEROMIE D., THUS CAUSING REVERSIBLE ERROR BY VIOLATING HIS RIGHT TO DUE PROCESS.
"SECOND ASSIGNMENT OF ERROR
 THE MAGISTRATE'S ACTION IN PERMITTING A WITNESS TO TESTIFY WAS AN ABUSE OF JUDICIAL DISCRETION, SINCE THE PROSECUTOR DID NOT PROVIDE A WITNESS LIST TO DEFENSE COUNSEL.
"THIRD ASSIGNMENT OF ERROR
 BASED ON FAULTY IDENTIFICATION, THE FINDING OF DELINQUENCY ON THE ROBBERY CHARGE WAS NOT SUPPORTED BY THE SUFFICIENT OR MANIFEST WEIGHT OF THE EVIDENCE, THUS CREATING REVERSIBLE ERROR.
"FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT PROVIDING THE TRANSCRIPT REQUESTED BY DEFENSE COUNSEL IN HIS OBJECTIONS TO THE MAGISTRATE'S DECISION, IN VIOLATION OF JUV.R. 40(E)(3)(b)."
On October 4, 1999, two complaints were filed in the lower court charging appellant with delinquency in connection with the alleged robbery of a bicycle and with resisting arrest (case No. 99070684). On that same day, appellant appeared before a magistrate with his foster parents but without counsel and was found delinquent on both charges. Subsequently, however, the court realized that appellant's foster parents, not his real parents, had appeared with him on October 4. The court, therefore, rejected the magistrate's recommendation to find appellant delinquent, appointed counsel to represent appellant and set a trial date for October 21, 1999. On October 21, 1999, however, the parties filed a joint motion for a continuance and the court reset the trial date for November 1, 1999.
On October 26, 1999, appellant's counsel filed a request for discovery that specifically requested the names of each witness that formed the basis of the state's charge. Thereafter, the trial date was again rescheduled and on November 4, 1999, appellant filed a motion requesting a competency evaluation and hearing. That matter was heard before the court on November 9, 1999, after which the court denied the motion and found appellant competent to stand trial. On that same day, November 9, 1999, another delinquency complaint was filed against appellant charging him with assault (case No. JC99072017). That complaint alleged that appellant had assaulted another youth while being detained at the Child Study Institute.
On November 23, 1999, both cases came before a juvenile court magistrate for both the adjudication and disposition hearings. At the adjudication hearing, the following evidence was presented. Colby Glaze, a youth leader on the boys floor of the Child Study Institute, testified that on November 9, 1999, appellant had been isolated but asked to use the bathroom. As he reached the bathroom he began shouting toward the direction of Rafael Moss, another juvenile. Then, instead of entering the bathroom, appellant ran down the hallway and started punching Moss. Glaze immediately separated the two juveniles. Rafael Moss also testified at the hearing. His testimony was consistent with that of Glaze. Moss stated that appellant punched him one time in the chest and that he did not provoke appellant.
The state next put on its witnesses relative to the robbery charge. Murray Crawford testified that he is a friend of appellant and that on October 2, 1999, he and appellant were hanging out together when appellant saw a boy across the street and said he was going to take his bike. Crawford then saw appellant walk across the street and place his hand on the handle bar of the bike. Crawford stated that he kept walking and did not hear anything but immediately thereafter appellant rode past him on the bike. Josh Ciha, the victim of the theft, testified next. Ciha stated that on October 2, 1999 his bike was stolen; however, he could not positively identify appellant as the thief. Nevertheless, he stated that the thief jogged up to him, grabbed the handle bar of the bike and said "This is a nice bike. Get off." Because he felt threatened by the thief's actions, Ciha handed over the bike. After the bike was stolen Ciha went home. Then, he and his father went out to try and find his bike. Subsequently, they located the bike and contacted the police.
The state next called Paul Smith to testify. Appellant, however, objected to Smith's testifying on the ground that he had not been given the names of any witnesses that were to be called by the state. More specifically, appellant argued that he had not been provided any official written discovery response with regard to witness names. Nevertheless, appellant admitted that he had an opportunity to speak with Smith that day prior to the start of the hearing. Because appellant was able to speak to Smith prior to the start of the hearing, the magistrate overruled his objection and allowed Smith to testify. Smith is a friend of Ciha and was with him on the day Ciha's bike was stolen. Smith then positively identified appellant as the thief. Smith further confirmed Ciha's version of the events and testified that appellant walked up to Ciha, put his hand on the bike's handle bar and said, "Nice bike. Get off." Finally, Smith testified that he did nothing to prevent the theft because he was afraid that appellant would harm him if he did. Jordan Voyles, who was with Ciha and Smith on October 2, 1999, also testified at the hearing below. Again, appellant objected to this testimony because he had not been given a witness list by the state and again the magistrate overruled the objection because appellant had an opportunity to speak with Voyles prior to the hearing. Voyles also could not identify appellant as the thief but confirmed the events of the theft as relayed by Ciha and Smith. Voyles also testified that he was afraid that the thief might beat up either him or his friends to get the bike.
The state next called Officers David Avalos and Greg Reichenbach of the Toledo Police Department to testify. These officers were involved in the investigation of the theft of Ciha's bike. After receiving a report of a stolen bike, the officers were dispatched to meet up with Ciha's father after he notified them that he had located the bike. Ciha's father pointed out a boy on a bike whom the officers then approached. The officers asked the boy his name and he responded "Jeromie [D.]" Officer Avalos then placed his hand on appellant's arm and told him that he was under arrest. With that, appellant jumped off of the bike and took off running. The officers ran after appellant and soon apprehended him. Subsequently, Josh Ciha identified the bike that appellant had been riding as his.
At the conclusion of the adjudication hearing, the magistrate found appellant delinquent for committing the crimes of assault in violation of R.C. 2903.13 and resisting arrest in violation of R.C. 2921.33(A). With regard to the robbery charge, however, the magistrate found appellant delinquent for committing the lesser included offense of theft in violation of R.C. 2913.02. The court then proceeded to the disposition hearing at the conclusion of which the magistrate recommended that appellant be committed to the Ohio Department of Youth Services for a minimum of one year until the age of twenty one.
Subsequently, appellant filed objections to the magistrate's decision and a request for a transcript of the adjudication hearing. The specific grounds raised in appellant's objections include in pertinent part that the court failed to give him a competency hearing, that there was insufficient evidence of identification to support the theft charge and that witnesses were improperly allowed to testify since the prosecutor had failed to comply with appellant's discovery request. On December 16, 1999, the trial court entered a judgment entry on appellant's objections finding them not well-taken. In addition, the court affirmed the decisions of the magistrate in both cases and made them the order of the court. It is from those judgments that appellant now appeals.
In his first assignment of error appellant asserts that the trial court erred in denying his request for a competency evaluation. He asserts that by denying him that evaluation, the trial court denied him his right to due process.
It is well established that "fundamental notions of due process demand that a criminal defendant who is not legally competent may not be tried or convicted of a crime." In re Williams (1997), 116 Ohio App.3d 237,241, citing Pate v. Robinson (1966), 383 U.S. 375 and State v. Berry
(1995), 72 Ohio St.3d 354. Although appellant in the present case is not a criminal defendant, the court in In re Williams, supra, noted that "`the right not to be tried while incompetent' is as fundamental in juvenile proceedings as it is in criminal trials of adults." Quoting Inre Johnson (Oct. 25, 1983), Montgomery App. No. 7998, unreported. Under Ohio's criminal law, "[a] defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence * * * that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37. Moreover, Juv.R. 32(A)(4) provides that a court may order a mental examination of the juvenile where his competence to participate in the proceedings is an issue. That rule, however, provides no guidance with regard to its application. Accordingly, in juvenile proceedings, courts have applied R.C. 2945.37 in light of juvenile rather than adult standards. As such, the issue before this court is "whether there was sufficient credible evidence upon which [the court] could find that [the juvenile] was capable of understanding the nature and objective of the proceedings against him and of assisting in his own defense." In re Williams, supra at 242.
In the proceedings below, appellant requested a competency evaluation through a motion dated November 4, 1999. Then, at the hearing of November 9, 1999, the parties presented arguments on the matter. Specifically, appellant's counsel requested that the court appoint Dr. Wayne Graves to perform a competency evaluation of appellant. After further argument, the court asked appellant if he had any questions. Appellant responded by asking if he would be going into the Youth Treatment Center ("YTC"). The court then explained that appellant had not yet been found delinquent and that he could not go the YTC unless and until he was. Appellant then asked when he would go to court. The court explained the trial procedure and told appellant that at the conclusion of the trial he would be found either delinquent or not delinquent and explained that these terms meant the same as guilty and not guilty. Appellant then asked if the judge thought he would be found guilty. The court responded by advising appellant to talk to his lawyer. In addition to the court's colloquy with appellant at this hearing, the court and parties discussed the fact that appellant had been evaluated by a Dr. Larry Hamme on July 9, 1999. Although this was not a competency evaluation it was a psychological evaluation that the court noted was very helpful. The court found nothing in that report that would cause him to question appellant's ability to stand trial. The court further noted that appellant had been before the court on a number of occasions over the past four years and had extensive exposure to the juvenile justice system. Based on this exposure, the court found that appellant was very familiar with court procedure. Although the court recognized that appellant had a low IQ, the court noted that Dr. Hamme specifically found that appellant knew the difference between right and wrong. Finally, the court found that based on his colloquy with appellant, appellant understood the possible consequences of the proceedings and had the ability to think in the future.
Based on these considerations, we conclude that there was sufficient credible evidence presented at the hearing below to support a finding that appellant was capable of understanding the nature and objective of the proceedings against him and of assisting in his own defense. Accordingly, the trial court did not err in denying appellant's motion for a competency evaluation and the first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the trial court erred in allowing Paul Smith to testify at the adjudication hearing because the state failed to provide appellant with a witness list in response to appellant's discovery request.
Juv.R. 24(A) is similar to Crim.R. 16(B)(1)(e) and provides in relevant part that "[u]pon written request, each party to whom discovery is requested shall * * * produce * * * [t]he names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense[.]" If a request for discovery is refused, Juv.R. 24(B) provides that the party seeking the discovery may apply to the court for a written order granting the discovery. If that order is then not complied with, Juv.R. 24(C) provides that the court may prevent the non-complying party from introducing the evidence at issue. Accordingly, Juv.R. 24 only authorizes sanctions, such as prohibiting a witness from testifying, when a party has failed to comply with a court order compelling discovery. Nevertheless, a juvenile court's ruling with regard to a discovery dispute is reviewed by an appellate court under an abuse of discretion standard. State v. Metz (June 4, 1997), Washington App. No. 96CA03, unreported.
In the present case, appellant filed a request for discovery on October 26, 1999. Appellee did not comply with that request. Appellant, however, never filed a motion for discovery in light of appellee's failure to comply. Moreover, when appellant filed his request for discovery, appellee had already filed subpoena requests with the court and those subpoenas were part of the record. Those requests include a subpoena for Paul Smith. The initial subpoenas commanded the witnesses to appear in court on November 1, 1999. That trial date, however, was continued. The state then filed new subpoena requests commanding the witnesses to appear on November 10, 1999. Again, those requests included a subpoena for Paul Smith. Accordingly, by a simple review of the court's record, appellant could have determined the witnesses the state intended to call. Moreover, the record is clear that prior to the adjudication hearing below, appellant's counsel was able to interview Smith. Under these circumstances, we cannot say that the trial court erred in allowing Smith to testify at the hearing below and the second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the finding of delinquency on the theft charge was against the manifest weight of the evidence in that none of the witnesses could identify appellant as the person who actually took the bike from Josh Ciha. In evaluating a trial court's decision under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
While it is true that at the adjudication hearing neither Josh Ciha nor Jordan Voyles could positively identify appellant as the thief, Paul Smith did positively identify appellant as the thief. Moreover, appellant's friend, Murray Crawford, testified that on October 2, 1999 he and appellant were hanging out together when appellant saw a boy across the street and said he was going to take his bike. Crawford then saw appellant walk across the street and place his hand on the handle bar of the bike. Although Crawford did not actually see appellant take the bike, he did testify that immediately thereafter appellant rode past him on the bike.
Appellant was found delinquent for violating R.C. 2913.02, the theft statute. That statute reads in relevant part:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 "(1) Without the consent of the owner or person authorized to give consent[.]"
Upon review of the evidence presented at the adjudication hearing, we cannot say that the trial court's finding of delinquency on the theft charge was against the manifest weight of the evidence. We further find that there was sufficient evidence to support the delinquency finding. The third assignment of error is therefore not well-taken.
In his fourth and final assignment of error, appellant asserts that the trial court erred in failing to provide him with a transcript of the adjudication hearing upon his filing of objections to the magistrate's decision. Appellant asserts that pursuant to Juv.R. 40(E)(3)(b) the court had a duty to provide appellant with that transcript upon his request.
Juv.R. 40(E)(3)(b) provides:
 "Objections shall be specific and state with particularity the grounds of objection. If the parties stipulate in writing that the magistrate's findings of fact shall be final, they may only object to errors of law in the magistrate's decision. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." (Emphasis added.)
As is clear from a reading of the emphasized portion of this rule, a juvenile court has no obligation to provide an objecting party with a transcript. Rather, the objecting party must support its objections with either a transcript or an affidavit. Appellant in the present case supported his objections with neither. The fourth assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Court costs of this appeal are assessed to appellant.
Melvin L. Resnick, J., James R. Sherck, J. Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ JUDGE