OPINION
Joseph Staten (Joseph), a minor child, appeals from the decision of the Carroll County Court of Common Pleas, Juvenile Division, which adjudicated him a delinquent.
On August 10, 2000, Joseph, age seventeen, was alleged to have raped a mentally impaired person who resided at the same residential facility for mentally retarded individuals as Joseph. Joseph was charged with two counts of rape in violation of R.C. 2907.02(A)(1)(c) and R.C. 2151.02(A) and one count of rape in violation of R.C. 2907.02(A)(2) and R.C.2151.02(A). The juvenile court held an initial hearing on August 11, 2000 where the court appointed Joseph an attorney and a guardian ad litem. The court entered a denial on Joseph's behalf. Joseph subsequently underwent a Competency Assessment for Standing Trial for Persons with Mental Retardation (CAST-MR) and a Sexuality Risk Assessment. The CAST-MR indicated that Joseph was not competent to stand trial.
The court held a second hearing on November 21, 2000. At the hearing, appellee, the State of Ohio, informed the court that the parties had reached an agreement. The parties agreed that the State would withdraw its motion to transfer jurisdiction to have Joseph tried as an adult and would dismiss Counts 2 and 3 against Joseph. In exchange, Joseph agreed to withdraw his denial of Count 1 and plead "true" to that charge. The parties also agreed that it was in Joseph's best interest that he be committed to the Ohio Department of Youth Services' Starlight Program.
The court then questioned Joseph regarding his understanding of the proceeding. The court accepted Joseph's admission to one count of rape and adjudicated him a delinquent. In its December 5, 2000 judgment entry, the court committed Joseph to the Department of Youth Services for a minimum of one year up to a maximum of or until his twenty-first birthday. Joseph filed a timely notice of appeal on January 4, 2001.
Joseph raises three assignments of error. His first assignment of error states:
 "JOSEPH STATEN WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION IN THAT HE WAS ADJUDICATED DELINQUENT WHILE INCOMPETENT TO STAND TRIAL."
Joseph argues that since he was incompetent to stand trial, the court could not properly adjudicate him delinquent. Joseph argues that the right not to be tried while incompetent applies in juvenile proceedings just as it does in criminal trials of adults. Citing, In re Williams
(1997), 116 Ohio App.3d 237, 241. He asserts that although no statutory standard has been enacted to guide competency determinations in juvenile proceedings, Juv.R. 32(A)(4) allows the court to consider the juvenile's social history and mental and physical examinations when the juvenile's competence is at issue. Joseph contends that since the right to counsel has been extended to juveniles, the requirement to be competent to stand trial is also extended to juveniles since the right to counsel would be meaningless without it. Citing, In re D.G. (1998), 91 Ohio Misc.2d 226,228.
Joseph failed to raise the issue of his competency in the court below; therefore, to prevail on his first assignment of error he must show plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. An appellate court may reverse the trial court only if the outcome of the trial clearly would have been different absent the error. Id. at paragraph two of the syllabus.
The Second District Court of Appeals has held that since "an incompetent defendant may not be convicted of a crime, a court's decision regarding the competency of an individual to stand trial will always be outcome-determinative in the most fundamental sense." In re Williams
(1997), 116 Ohio App.3d 237, 241. Accordingly, if the trial court erred in not holding a competency hearing sua sponte, Joseph's adjudication should be reversed.
"The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains, `sufficient indicia of incompetence,' that an inquiry into the defendant's competency is necessary to ensure his right to a fair trial." State v. Vrabel
(Mar. 2, 2000), Mahoning App. No. 95-CA-221, unreported, 2000 WL 246482 at *8, citing State v. Berry (1995), 72 Ohio St.3d 354, 359; Drope v.Missouri (1975), 420 U.S. 162.
Before entering his plea, Joseph underwent several court-ordered psychological tests. The Columbus Developmental Center administered Joseph the CAST-MR among other tests. Joseph scored a 33 out of a possible 50. The report stated that most mentally retarded people who are competent to stand trial score an average of above 37, while those who are mentally retarded and incompetent to stand trial score an average of 25.6. It went on to state that "[i]n this regard, Joe is clearly incompetent to stand trial." The report further explained that Joseph was able to "parrot" legal terms but that he did not have a full understanding of them. Joseph also took an I.Q. test that revealed he had an I.Q. of 77. The report specifically stated:
 "He [Joseph] did not have an adequate understanding of the legal process. He could not identify basic responses relating to victim, witness, prosecutor, jury, judge etc. He was aware that he was being represented by his lawyer but was unable to understand the role of the prosecutor who he was of the view would also tell his side of the story. He is unable to understand the adversarial nature of the proceedings. * * * He seems to have inadequate understanding of many basic legal concepts, does not have the skills to assist in his defense and cannot adequately understand the facts of his case by not being able to understand the gravity of the situation."
Joseph's psychological evaluation report stated that he suffers from mental retardation and that he would benefit from active treatment at a facility specializing in the care of mentally retarded sex offenders. It went on to explain that Joseph does not have the mental competence to "consult with lawyers with a reasonable degree of rational understanding and otherwise assist in the defense of the charges against him." The evaluation stated that Joseph was incompetent to stand trial and that he was not a candidate for restoration to competency within a year to two years.
This report, which was submitted to the court, raises a "sufficient indicia of incompetence" to entitle Joseph to a competency hearing. The court should have recognized this and ordered such a hearing.
Accordingly, Joseph's first assignment of error has merit.
Joseph's second assignment of error states:
 "JOSEPH STATEN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION."
Joseph argues that his appointed counsel was ineffective because counsel failed to request a competency hearing for Joseph after a competency evaluation determined that he was incompetent to stand trial. He claims that his counsel erred to his prejudice by informing the court that it was in his best interests to be placed with the Department of Youth Services instead of requesting a competency hearing.
To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984), 466 U.S. 668,687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, supra, at paragraph three of the syllabus.
Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id. The Ohio Supreme Court has held:
 "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Strickland, 466 U.S. 689.
Thus, Joseph's counsel enjoys a strong presumption that he refrained from requesting a competency hearing as part of a sound strategy. Part of the deal that Joseph's counsel arranged with the State included an agreement that the State would withdraw its motion to transfer jurisdiction to have Joseph tried as an adult. Had counsel requested a competency hearing and the court found Joseph competent, the State would have attempted to try Joseph as an adult. By making the deal with the State, Joseph's counsel guaranteed that Joseph would not be tried as an adult. Given the strong presumption of counsel's competence, we cannot say that it was outside of the realm of sound trial strategy for Joseph's counsel not to request a competency hearing.
Accordingly, Joseph's second assignment of error is without merit.
Joseph's third assignment of error states:
 "THE TRIAL COURT ERRED WHEN IT ACCEPTED JOSEPH'S ADMISSION TO THE CHARGE OF RAPE BECAUSE JOSEPH'S PLEA WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION, AND JUV.R. 29."
Joseph argues that his plea was not knowingly, intelligently, and voluntarily entered into. He asserts that the trial court failed to advise him of the nature of the charge to which he was admitting, of the consequences of his admission, and of the rights that he was waiving by entering the admission.
Juv.R. 29(D) provides, in pertinent part:
 "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
This court has held that Juv.R. 29(D) is somewhat analogous to Crim.R. 11(C)(2) in that both require the trial court to personally address the defendant on the record with respect to the rights set out in the rules.In re Royal (1999), 132 Ohio App.3d 496, 504. A juvenile court need only substantially comply with Juv.R. 29(D) before accepting the juvenile's admission. Id. If the court fails to substantially comply with Juv.R. 29(D), the adjudication must be reversed and the juvenile must be permitted to change his plea. Id.
The best method for the trial court to comply with Juv.R. 29(D) is to use the language of the rule itself, "carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows that he is waiving it by entering an admission." In re Miller (1997), 119 Ohio App.3d 52, 58, citing Statev. Ballard (1981), 66 Ohio St.2d 473, 479.
Before the court accepted Joseph's admission, the following colloquy took place:
 "THE COURT:And Joe, you've talked this over with Mr. McLane [Joseph's counsel] and Miss Falconer [Joseph's guardian ad litem]?
"THE MINOR: Yes, sir.
 "THE COURT: And do you understand that what's being done in here is an admission to a charge?
"THE MINOR: Yes, sir.
 "THE COURT: And do you understand, Joe, that you could have had a trial with evidence presented here in the courtroom if you wanted to; but by entering the admission as the lawyers have indicated and proposed, you are waiving that right to trial. You understand that, Joe?
"THE MINOR: Yes, sir.
 "THE COURT: And it's your wish to enter that admission as the lawyers have said?
"THE MINOR: Yes.
 "THE COURT: And Mrs. Gardner, as a parent, is it with your consent and concurrence that Joe enter the admission today?
"MRS. GARDNER: Yes.
 "THE COURT: And you understand that in so doing, he is waiving his right to trial, his silence?
"MRS. GARDNER: Yes." (Tr. 4-5).
The trial court failed to inform Joseph of many of the important rights he was waiving by entering an admission. The court informed Joseph at his initial hearing of his right to remain silent and of the nature of the charges against him and the consequences he faced. However, Joseph's initial hearing took place on August 11, 2000. Joseph's second hearing at which he entered his admission did not take place until over three months later. At this hearing, before accepting Joseph's admission, the court did not advise Joseph of any of the above-mentioned rights and consequences. Furthermore, the court never informed Joseph of his right to challenge witnesses and evidence against him.
Given the fact that the court failed to inform Joseph of his right to challenge witnesses and evidence against him, his right to remain silent, the nature of the allegations against him, and the consequences he faced by entering an admission, it cannot be said that Joseph entered his admission knowingly, intelligently, and voluntarily.
Accordingly, Joseph's third assignment of error has merit.
For the reasons stated above, the decision of the trial court is hereby reversed and remanded for the trial court to conduct a competency hearing.
Waite, J., concurs.
DeGenaro, J., concurs.