**In re WILLIAMS, Appellant.**

[Cite as *In re Williams* (1997), 116 Ohio App.3d 237.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15803.

Decided May 23, 1997.

*Chantel Doakes,* Montgomery County Assistant Prosecuting Attorney, Appellate Division, for appellee.

*David H. Bodiker,* Ohio Public Defender, and *Susan A. Ward,* Assistant Public Defender, for appellant.

---

FREDERICK N. YOUNG, Presiding Judge.

This appeal arises from an action in the Montgomery County Court of Common Pleas, Juvenile Division. Nicholas Williams, a moderately retarded fifteen-year-old juvenile, informed his therapist that he had engaged in a brief sexual relationship with a nine-year-old girl the previous summer, while he was a runaway. A complaint charging Nicholas with two counts of statutory rape, an aggravated felony of the first degree under R.C. 2907.02(A)(1)(b), was filed on November 2, 1996, and a detention hearing was held the same day.

One week after the initial hearing, Nicholas's attorney filed a motion for mental evaluation. Nicholas was evaluated by Dr. Laura Fugimura, the court psychologist, and Dr. Mark Williams, an independent psychologist, for the purpose of determining his competency to stand trial. Both doctors filed psychological evaluation reports with the court. The reports documented Nicholas's history of physical abuse at the hands of his mother, physical and sexual abuse by other family members, and his own past victimization of other children. His social history report revealed that Nicholas had attended outpatient sex specific coun-

seling and that he was placed in a foster home soon after the alleged rape occurred. While Nicholas apparently ran away from his foster home on the first night he was there, he later came to enjoy living with his foster parents who, according to Nicholas, express affection and caring in a manner that he has never before experienced. After examining him, both doctors determined that Nicholas has the intellectual abilities of a six year old, but disagreed as to his competency to stand trial. Dr. Fujimura found that, although Nicholas "did not seem to understand the functions of a Judge, jury, or witness," he had an adequate understanding of the role of the attorneys and the circumstances surrounding the charges to be competent for trial. Dr. Williams, on the other hand, concluded that Nicholas was incompetent to stand trial.

Magistrate Cunningham found Nicholas to be competent to stand trial in an entry captioned "Delinquency Magistrate's Order of Continuance." The plea and dispositional hearing was held on February 13, 1996, before Magistrate Cunningham. At the hearing, Nicholas Williams admitted to one count of rape in violation of R.C. 2907.02(A)(1)(b). Before accepting the plea, Magistrate Cunningham explained each of Nicholas's relevant rights and, after each one, asked whether he understood the right. Nicholas responded "yes" to every question. Nicholas also answered "yes" when the magistrate asked him whether the allegations in the complaint were true. Without any further exchanges with Nicholas, the magistrate accepted the admission and proceeded to disposition.

The guardian *ad litem*, Gordon Taylor, indicated that his primary concern was that Nicholas receive treatment. Wayne Gilkison, the probation officer, emphasized Nicholas's need for treatment, but stated that the probation department had been unsuccessful in finding placement for him. He stated that there would be no services available to Nicholas if he were returned to the community and recommended that Nicholas be committed because of the high risk that he would re-offend. Nicholas's attorney asserted that Gordon Taylor had been able to locate "two institutions or treatment facilities willing and ready to take Nicholas with his I.Q. and his sex-specific needs." One of the facilities was Fairfield Academy in Thornville, Ohio, which would have provided placement for Nicholas at a cost of $225 per day, for a period of between eighteen and twenty-four months. According to Nicholas's attorney, the other facility, which is located in Parma, Ohio, was ready to assess Nicholas for placement. The guardian *ad litem* qualified these assertions, noting that Nicholas's acceptance into Fairfield Academy was contingent on a satisfactory interview. He also stated that while he was unaware whether the Parma facility had or would formally accept Nicholas, it was his understanding that acceptance was dependent on assurances of funding and, possibly, an interview with Nicholas.

The magistrate responded that she did not believe that sufficient funding was available for Nicholas to receive $225 per day treatment. The guardian *ad litem* urged the magistrate to consider attempting to find funding through the Interagency Clinical Assessment Team (ICAT) before imposing a sentence. However, the magistrate concluded that a continuance would cause "unnecessary delay." The magistrate also denied Nicholas's attorney's oral motion requesting that an ICAT assessment be completed to determine whether funding could be found for the placement of Nicholas in a sex-offender facility. Finally, the magistrate announced that she was committing Nicholas to the Ohio Department of Youth Services for a period of one year, and ordering that he receive sex-specific counseling and treatment while in detention.

The magistrate's decision and judge's order of adjudication and disposition, filed on February 20, 1996, committed Nicholas "to the Department of Youth Services for care and rehabilitation" for a term of at least one year and not more than six years. The decision made no express mention of sex-specific counseling. Included with the decision was the judge's order stating only that "[t]he above Magistrate's Decision is hereby adopted as an Order of this Court." Nicholas Williams filed a timely notice of appeal and asserts five assignments of error.

## II

The following two assignments of error concern the magistrate's determination that Nicholas was competent to stand trial for statutory rape:

### A

*FIRST ASSIGNMENT OF ERROR:*

"The magistrate erred in finding Nicholas competent to stand trial.

"Nicholas was deprived of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution in that he was incompetent to stand trial."

■ Under his first assignment of error, appellant alleges that he was denied due process of law because the magistrate's determination of competency was not supported by the evidence. Generally, where, as here, the appellant has failed to preserve the alleged error by lodging an objection,[1] his right to contest it is

---

1. In fact, Nicholas's counsel expressly declined the magistrate's suggestion that she should object to the competency determination for the purpose of preserving the issue for appellate review. The record of the disposition reveals the following exchange:

    "THE COURT: * * * I'm just going to say this for his benefit, I would also say that you would object again to my finding that he's competent. So you make that objection.

waived. See *State v. DeNicola* (1955), 163 Ohio St. 140, 56 O.O. 185, 126 N.E.2d 62, paragraph three of the syllabus; *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, reconsideration denied (1996), 75 Ohio St.3d 1453, 663 N.E.2d 333, certiorari denied (1996), 519 U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169. Thus, we will review the issue for plain error. Crim.R. 52(B). We recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717, certiorari denied (1991), 498 U.S. 1127, 111 S.Ct. 1092, 112 L.Ed.2d 1196, rehearing denied (1991), 499 U.S. 971, 111 S.Ct. 1612, 113 L.Ed.2d 673.

█ Generally, in order to prevail under the plain error standard, an appellant must demonstrate that the outcome of his case would clearly have been different but for the error that he alleges. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, 1046. The United States Supreme Court and the Supreme Court of Ohio have held that fundamental notions of due process demand that a criminal defendant who is not legally competent may not be tried or convicted of a crime. See *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433, 438, reconsideration denied, 73 Ohio St.3d 1428, 652 N.E.2d 801, certiorari denied, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766. Because an incompetent defendant may not be convicted of a crime, a court's decision regarding the competency of an individual to stand trial will always be outcome-determinative in the most fundamental sense. See *Lagway v. Dallman* (N.D.Ohio 1992), 806 F.Supp. 1322, 1333 ("Competency is an underlying predicate to due process."). Thus, if error occurred in the competency proceedings such that the magistrate's conclusion that Nicholas was competent to stand trial cannot be relied upon, the decision must be reversed.

█ Although Nicholas is not a criminal defendant, this court has held that "the right not to be tried while incompetent" is as fundamental in juvenile proceedings as it is in criminal trials of adults. *In re Johnson* (Oct. 25, 1983), Montgomery App. No. 7998, unreported, at 10, 1983 WL 2516. The constitutional test under the Fourteenth Amendment for competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a

---

"MS. MARTIN: Well, I would object to your finding of competency, but I don't think we have an appealable argument, so that is why I didn't say anything at first, but for the record—

"THE COURT: All the things that you want to say on the record, you know, may be, you know, those are things that you always can appeal whatever I say.

"MS. MARTIN: Mmm-hmm. Yeah. Object.

"THE COURT: Okay. So you object, then you—

"MS. MARTIN: No, we accept the competency issue. We didn't feel that we had anything for appeal there."

reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States* (1960), 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825. Under Ohio's codification of this standard, a defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that "because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). While Juv.R. 32(A)(4) provides that the court may order a mental examination where competency is in issue, no statutory standard has been enacted to guide competency determinations in juvenile proceedings. This court, however, has determined that the standard enunciated in R.C. 2945.37(A) governs competency evaluations of juveniles, so long as it is applied in light of juvenile rather than adult norms. *In re Johnson, supra,* at 11, 1983 WL 2516. Thus, we review the magistrate's determination of competency in order to determine whether there was sufficient credible evidence upon which she could find that Nicholas was capable of understanding the nature and objective of the proceedings against him and of assisting in his own defense.

In addition to the psychological reports prepared by Dr. Williams and Dr. Fujimura, the magistrate heard the testimony of both doctors at the competency hearing. Dr. Williams testified that he conducted a two and one-half hour interview with Nicholas at the detention center. He stated that his understanding, gleaned from previous reports on Nicholas, that Nicholas has significant cognitive limitations was quickly confirmed. Nicholas was unable to give his date of birth, was unable to spell his own middle name, and was unclear on when and for how long he had been incarcerated. When asked about the two pending rape charges, Nicholas recounted that he had become involved with a nine-year-old girl during a time when he was living on the streets. Nicholas stated that he had been offered a place to stay for the weekend in the house of a family that had several adoptive placements. Nicholas stated that during his stay, he was approached by the girl, who invited him up to her bedroom, disrobed, and asked him to have sex with her. He told Dr. Williams that this situation arose twice over the weekend and that he complied with the girl's requests both times. Dr. Williams testified that Nicholas expressed no guilt or remorse regarding these encounters, but that Nicholas indicated that he knew that his behavior was "wrong." Nicholas also revealed that when he was twelve years old an adult relative of his had sexually abused and threatened him.

Dr. Williams further testified that he administered two psychological tests on Nicholas. The first, the Weschler Intelligence Skill for children, revealed that Nicholas's cognitive functioning and reading skills were so low that the standard tests normally administered to adolescents could not be employed. The test

revealed that Nicholas has a full scale I.Q. of 40, and that 99.9 percent of other children in his age group would have shown a higher level of cognitive functioning. For the second test, the doctor administered the "house-tree-person" test. Nicholas drew the test's eponymous figures and Dr. Williams used the drawings to make inferences concerning Nicholas's psychological development. According to Dr. Williams, Nicholas's drawings revealed, among other things, the following: a low level of psychosexual maturity; poor social emotional development; feelings of social isolation, inadequacy, emptiness, and futility; and a strong desire for acceptance and approval.

With respect to competency, Dr. Williams opined that Nicholas was not mentally competent to stand trial. In support of this conclusion, Dr. Williams stated that Nicholas, while aware of the facts, would not be able to assist in his own defense, would likely have only a nominal understanding of the roles of the attorneys and the judge, but no real appreciation of their functions or relationship in the courtroom, and did not sufficiently understand the consequences of the offense with which he was charged. Dr. Williams expressed the belief that Nicholas had only a superficial understanding of the events and people involved and could not appreciate the significance of his acts to the young girl involved.

Dr. Laura Fujimura testified for the state. Dr. Fujimura stated that she also conducted an interview of Nicholas Williams for the purpose of determining whether he was competent to stand trial. Dr. Fujimura testified that she administered the Weschler Individual Achievement Test, the "house-tree-person" test, and the Georgia Court Competency Test to Nicholas. Like Dr. Williams, she testified that her administration of the Weschler test revealed that Nicholas was functioning at a kindergarten level. She testified that the Georgia Court Competency Test is an oral test that is designed to aid in ascertaining an individual's understanding of courtroom procedures and personnel, and to assess his ability to explain the circumstances surrounding the charges. The administration of the test produces a point total on a range up to one hundred, with a score of seventy points or more indicating competency. Dr. Fujimura testified that Nicholas received a score of eighty points. She stated that Nicholas was able to answer most of the questions, especially those involving the circumstances leading up to the rape charges. He was "weaker," however, regarding courtroom procedures and personnel, and Dr. Fujimura stated that he was "not certain of the role of the judge or the jury."

Regarding the circumstances surrounding the alleged offense, Dr. Fujimura testified that Nicholas told her that he had initially been approached by the girl and that she asked him to have sex with her. The doctor testified that Nicholas stated that he knew that his conduct was wrong, but that he has uncontrollable urges to touch others in a sexual manner. She expressed the opinion that

Nicholas was competent to stand trial. She explained that her opinion was based largely on Nicholas's ability to answer the questions of the Georgia Competency Test.

Appellant argues that the standard employed by the magistrate in her determination that Nicholas was legally competent was unclear because it was not articulated in the order containing her conclusion. He argues that, moreover, Dr. Fujimura's conclusion of competency is tainted by her apparent reliance on the incorrect legal standards. Dr. Fujimura focused largely on Nicholas's ability to determine whether his actions were morally right or wrong, his ability to state the circumstances leading up to his arrest, and the likelihood that he would reoffend. As Dr. Fujimura stated at the competency hearing:

"The bottom line is Nicholas was able to answer those questions, given his limitations, and he indicated to me that he does not always act out on his urges because he sometimes fears he is going to get caught, which indicates to me that this is not an individual who just indiscriminately acts on his urges because he doesn't know what he is doing, or doesn't know what the consequences are. He indicated to me that if he believed he's going to get caught then he somehow makes himself stop, but that is very difficult for him to do so.

"He was able to explain the circumstances leading up to his pending charges, and I do believe that he would be able to cooperate with his attorney, and I believe that he is competent to stand trial."

Dr. Fujimura's "bottom line" does not answer the question posed by a competency hearing—whether the accused is capable of understanding the nature and objective of the proceedings against him and of assisting in his own defense. See R.C. 2945.37(A). Rather, although the doctor may have stated the proper legal standard in her testimony and her report, her conclusion seems to be influenced primarily by her evaluation of Nicholas's legal *sanity* and her own conception of moral culpability. As appellant points out, a defendant's ability to determine right from wrong is an appropriate inquiry in the legal determination of sanity, not competency. Likewise, the risk that the defendant will continue to offend if released is wholly irrelevant to the issue of his competency to stand trial.

While Dr. Fujimura's conclusions appear to have been tainted by considerations of Nicholas's moral responsibility for his behavior, rather than simply his mental competency to stand trial, Dr. Williams's conclusion may have been unduly influenced by his opposition to the state's decision to pursue statutory rape charges against Nicholas. Dr. Williams's report concluded the following, in pertinent part:

"2. While Nicholas' inappropriate sexual behavior, resulting in current and past rape charges, is self-admitted and undenied, felony level charges of the severity of rape are deemed to be unwarranted.

"3. Given his consistently and severely deficient levels of mental functioning and moral judgment, the prosecution and conviction of rape charges are excessive and unjustified."

These conclusions suggest a preoccupation with matters beyond the scope of Dr. Williams's role of evaluating Nicholas's competency to stand trial. Attached to Dr. Williams's report is a letter from Dr. Williams dated January 24, 1996. The letter reads as follows:

"At the request from Mr. Wayne Gilkison, probation officer for Nicholas D. Williams (DOB: 12/10/79), this letter is written as a supplement to my recently submitted psychological evaluation report on this youth. Mr. Gilkison informed me that the court required a more explicit conclusion as to Nicholas' competency to stand trial on the delinquency charges of rape he now faces.

"Please know that the third point listed in my original report was intended to address this issue. Inasmuch as the Court requires a more explicit statement I must conclude, based on findings contained in my original report, that Nicholas is *not,* in my expert opinion, competent to stand trial on these charges." (Emphasis *sic.*)

██ While pursuing the rape charges against Nicholas may well have been "excessive and unjustified," Dr. Williams's reliance on that conclusion is troubling. We believe that the reports and testimony of both expert witnesses in this case were irreparably muddled with incorrect standards of law and inappropriate judgments pertaining to moral responsibility. In light of these deficiencies in the evidence, the magistrate could not have made a reliable competency finding based on the expert testimony and the reports that would satisfy Nicholas's substantive and procedural due process rights. See, generally, *Lagway v. Dallman* (N.D.Ohio 1992), 806 F.Supp. 1322. Accordingly, Nicholas's fundamental right not to be tried or convicted of an offense while incompetent has not been adequately protected.

Of course, where the evidence presented by both sides is suspect, the allocation of the burden of proof will often become the dispositive issue. The United States Supreme Court has held that a state may, as Ohio does, presume competence and place the burden on the defendant to prove his incompetence by a preponderance of the evidence without violating due process. *Medina v. California* (1992), 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353. Thus, if both experts are unreliable because of their apparent confusion of the appropriate standard with notions of moral culpability, the presumption of competence should stand firm. However,

the United States Supreme Court's recent decision striking down as violative of due process an Oklahoma statute's requirement that the defendant prove incompetence by clear and convincing evidence may counsel against a cavalier reliance on R.C. 2945.37(A)'s presumption of competency. *Cooper v. Oklahoma* (1996), 517 U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498. In *Cooper*, the unanimous court explained the rationale supporting its conclusion in *Medina* as follows:

"Our conclusion that the presumption of competence offends no recognized principle of fundamental fairness rested in part on the fact that the procedural rule affects the outcome only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." (Internal quotations and citations omitted.) 517 U.S. at ——, 116 S.Ct. at 1377, 134 L.Ed.2d at 506–507.

In the case *sub judice*, we cannot say that there was presented an equipoise of evidence such that the presumption of competence should be left undisturbed. Rather, when the testimony and reports of the experts are pruned of their opinions on Nicholas's ability to distinguish "right" from "wrong" and on whether prosecution was "excessive" or "unwarranted," the remaining evidence seems to point toward the conclusion that Nicholas was not competent to stand trial. Nicholas has, according to Dr. Williams's report, a full scale I.Q. of 40 and both parties agree that he has, at least in many respects, the mind of a six year old. Such indications of low intellectual ability as I.Q. and mental age may be crucial factors in a competency determination. See generally "Competency to Stand Trial of Criminal Defendant Diagnosed as 'Mentally Retarded'—Modern Cases," 23 A.L.R.4th 493. Furthermore, Dr. Fujimura herself testified that Nicholas had difficulty understanding the roles of the judge and jury, and her psychological report revealed that he was afraid that if he told his defense attorney the facts surrounding his arrest he would "get sent up to jail for the rest of [his] life." It is difficult to reconcile these findings with Dr. Fujimura's conclusion that Nicholas was capable of assisting his attorney in his own defense.

Moreover, on cross-examination, Nicholas's trial attorney questioned Dr. Fujimura about whether she believed that Nicholas understood that the reason supporting the charges of statutory rape was not simply that he had engaged in sex acts with the girl, but that the girl was only nine years old at the time. The doctor responded that Nicholas "may not have been aware * * * of the details," but that he understood "enough about the situation that he did not say to me that rape means you load up cans of soup into the grocery cart and reel it out the door." This, of course, is not an adequate understanding of the nature of the charge to support a finding of competency. In a statutory rape prosecution, it is the "details" that make the case. In fact, Nicholas's statements that are included in Dr. Fujimura's report reveal that Nicholas may equate the term "rape" with

any sexual intercourse, and did not appreciate the significance of the girl's age—the "detail" that made his alleged acts criminal.

█ The evidence appears to establish a prima facie case that Nicholas did not understand the nature of the proceedings against him or was incapable of assisting in his own defense, and, accordingly, the presumption of competence may not, by itself, defeat Nicholas's claim of incompetency. In light of the apparent confusion over the appropriate legal standard at issue, the substantial evidence of incompetence, and the lack of competent and credible evidence tending to show competency, we believe that the magistrate erred in finding Nicholas competent to stand trial on the basis of the competency hearing and the experts' reports. Accordingly, the first assignment of error is sustained, and we reverse the magistrate's finding and remand this case for a competency hearing in which the appropriate legal standard is clearly applied.

## SECOND ASSIGNMENT OF ERROR:

"The court erred in failing to make a determination as to Nicholas' competency to stand trial. Nicholas was deprived of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution and Juv.R. 40."

Under the second assignment of error, appellant argues that the court's failure to rule directly on the issue of competency violated his state and federal constitutional rights to due process and Juv.R. 40. As appellant points out, a competency hearing was held, but no specific entry was filed determining the issue of competency. Rather, in one of five short entries captioned "Delinquency Magistrate's Order of Continuance," Magistrate Cunningham included the statement "after hearing the evidence regarding competency of Nicholas D. Williams, and the court being fully advised in the premises, finals [sic] that Nicholas D. Williams is competent to stand trial." The judge who adopted Magistrate Cunningham's ultimate disposition of the case, Judge Michael Murphy, did not specifically adopt the finding of competency. Rather, Judge Murphy simply adopted the magistrate's decision, which made no express reference to competency.

We regard the magistrate's determination of an important substantive issue under the rubric of a purely procedural order of continuance, with no express adoption by the court, as having questionable validity even under the recently amended Juv.R. 40, which generally inflates the authority of magistrates. However, in light of our decision to reverse this matter on the substance of the competency hearing and determination, we decline to attempt to define the scope of a magistrate's authority under that rule. We note only that, while Juv.R.

40(C)(3) grants magistrates the power to enter certain orders without judicial approval, orders pertaining to competency are not expressly listed among them.

## III

### THIRD ASSIGNMENT OF ERROR:

"The trial court erred when it accepted Nicholas' admission to the charge of rape because Nicholas' plea was not knowing and voluntary under the Fourteenth Amendment to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution and Juv.R. 29."

### FOURTH ASSIGNMENT OF ERROR:

"The juvenile court erred in allowing Nicholas to be formally prosecuted for rape under the circumstances of this case, depriving Nicholas of due process of law as guaranteed to him by the Fourteenth Amendment to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution, Chapter 2151 of the Revised Code and Juvenile Rules 1 and 9(A)."

### FIFTH ASSIGNMENT OF ERROR:

"The court erred by committing Nicholas to the Department of Youth contrary to the goals and public policy enunciated in R.C. 2151.01 and Juv.R. 1 and 29."

In light of our disposition of the first assignment of error, the appellant's remaining assignments of error are moot.

## IV

Accordingly, the magistrate's finding, and the court's presumed adoption thereof, that Nicholas Williams was competent to stand trial is reversed and the cause is remanded for a new hearing on the issue of competency. All findings subsequent to and predicated on the competency determination regarding Nicholas's delinquency and commitment to the Department of Youth Services are vacated.

*Judgment accordingly.*

GRADY, Judge, concurring:

I am completely in accord with Judge Young's well-reasoned opinion. I write separately only to point out that the magistrate's decision appears to have been affected by considerations of the cost involved in securing the treatment for Nicholas that a finding of incompetency would require. If so, that is wholly

improper. R.C. 2945.38 sets out the procedures required in that event. If costs must be paid by the committing authority, it may look to other agencies to share in that cost, but it cannot reject the alternatives provided because of the costs involved.