OPINION
Appellant, Joshua J. Smith, a fifteen year old, appeals his adjudication as a delinquent child in the Hancock County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm the decision of the trial court.
On April 10, 2001, a complaint in delinquency was filed in the juvenile court alleging that the appellant had violated R.C. 2907.02(A)(1)(b), Rape, a felony of the first degree if committed by an adult. The complaint alleged that the appellant, then fourteen years of age, inserted his finger into the vagina of his sister, a three year old child. An initial hearing on the complaint was held on May 10, 2001, at which time the appellant requested the assistance of counsel. The matter was continued to June 11, 2001 when the appellant appeared in court with counsel and entered a denial to the charge.
On June 18, 2001, the appellant, appearing with counsel, admitted to the charge and was adjudicated delinquent. The court ordered the appellant to undergo a psychological evaluation through the Toledo Court Diagnostic Center before his dispositional hearing. On July 31, 2001, the court reviewed the report in the presence of the appellant, his mother, and his attorney and ordered that the appellant be committed to the Department of Youth Services ("DYS").
The appellant now appeals and asserts the following four assignments of error:
 ASSIGNMENT OF ERROR NO. I
The trial court committed plain error and violated Joshua J. Smith's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution by failing to obtain a plea that was given knowingly, intelligently, and voluntarily.
The appellant asserts that the trial court committed plain error through its failure to comply with Juv.R. 29 in obtaining an admission from the appellant that was not knowing, intelligent, and voluntary. Specifically, the appellant contends that the court twice failed to comply with Juv.R. 29(B) by failing to explain the purpose and consequences of the hearings. Generally, when an appellant has failed to preserve an alleged error by raising an objection, his right to challenge it is waived.[1] We, therefore, review the issue for plain error.[2]
In Reichert v. Ingersoll,[3] the Ohio Supreme Court stated:
 Implementation of the plain-error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. The plain-error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant. Although the plain-error doctrine is a principle applied almost exclusively in criminal cases, this court has stated that the doctrine may also be applied in civil causes, even if the party seeking invocation of the doctrine failed to object * * * if the error complained of `would have a material adverse affect on the character and public confidence in judicial proceedings.' * * * (Citations omitted.)
 To prevail under the plain error standard, an appellant must show that the outcome of the case would have been different but for the error alleged.[4]
We begin our analysis with the Due Process Clause of theFourteenth Amendment to the United States Constitution which enounces, in pertinent part, that no state shall deprive any person of liberty without due process of law. The United States Supreme Court has cautioned that this guarantee applies to adults as well as children.[5] Consequently, state juvenile court proceedings must meet fair treatment standards and satisfy the Due Process requirements of the Fourteenth Amendment.[6]
State juvenile courts must comply with Juv.R. 29 to ensure minors their due process rights and fairness to which they are constitutionally entitled.[7]
At the beginning of an adjudicatory hearing, Juv.R. 29(B) requires the court to do the following:
 (1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;
 (2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing * * *.
 Determining whether a party's admission complies with Juv.R. 29 is analogous to deciding whether a criminal defendant's guilty plea complies with Crim.R. 11.[8]
The record is reviewed for substantial compliance with Juv.R. 29.[9] The question is not whether the judge strictly complied with the wording of the statute, but whether the defendant understood his rights and the effect of his admission.[10]
On May 10, 2001, the appellant's initial court appearance, the court read the charges against him, reading first the language of the statute followed by a plain English description of the criminal act. The court then asked the appellant's mother if she had received a copy of the complaint, and she responded that she and Joshua had received a copy. The court then asked the appellant if he understood why he was in court. Joshua replied in the affirmative. Before proceeding further, the court informed the appellant that he had a right to be represented by an attorney. When Joshua stated that he wanted an attorney, the court halted the proceedings and referred the appellant to the Public Defender's Office.
The trial court substantially complied with the requirements of Juv.R. 29(B) in all respects but one in the May 10th hearing. The court ascertained that the parties had notice.[11] The court also informed the parties of the substance of the complaint and asked whether the appellant understood the purpose of the hearing.[12] The trial court did not inform the parties of the possible consequences of the hearing. However, in light of the fact that the proceedings went no further once the appellant requested counsel, the court's failure to enlighten the appellant of the hearing's possible consequences is harmless error. We have previously stated that "[e]rrors of constitutional dimension do not necessarily require a reversal of criminal convictions if the reviewing court can confidently determine from the entire record that the error was harmless beyond a reasonable doubt."[13] Our review of the trial transcript reveals that the appellant was not prejudiced in any manner by the court's May 10th failure to review the hearing's possible consequences.
The appellant also contends that the trial court failed to explain the purpose and consequences of the June 11, 2001 hearing. The court stated that they were there on a complaint alleging an "F1 offense," and asked Joshua's trial counsel to make an appearance on the record. The court then asked the defendant's counsel if he was prepared to make a formal plea. Before the consequences of the hearing were explained, a denial was entered to the charge.
The state offers a different version of the facts on June 11, 2001, in which the court, addressing the appellant before the plea was entered, states: "This is what they call a felony in the first degree. This is about as serious an offense as one can get." After thoroughly reading the June 11, 2001 transcript, we conclude that this exchange never took place. Nevertheless, we conclude that the appellant was aware of the purpose of the hearing from his previous visit to the court.
On June 18, 2001, Joshua entered an admission to the charge against him. At the beginning of the proceedings the court stated that they were there on a first degree felony and asked Joshua if he understood the crime he was going to be admitting to. He replied, "molesting my sister." The appellant asserts that his admission was invalid based upon the court's failure to substantially comply with Juv.R. 29.
Upon an entry of an admission, Juv.R. 29(D) requires the trial court to address the party and determine both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
 The court may hear testimony, review documents, or make further inquiry, as it considers appropriate * * *.
The appellant states that after accepting Josh's plea, the court explained the rights he would be giving up. On the contrary, the trial court ascertained that Josh's plea was entered into voluntarily before
accepting his plea. The appellant informed the court that he would be entering an admission. The court then asked a series of questions to evaluate the voluntariness of his admission and the minor's awareness of the consequences. Josh was asked if he understood that by admitting to the crime, he was giving up his right to a trial; if he understood what a trial is; if he understood that he was giving up his right to question witnesses; if he understood that he would have a right to testify and present his case or to remain silent; if he understood that he had the right to call his own witnesses into court; if he understood that, if the case went to trial, he would be innocent until the prosecution proved his guilt; and, if he understood the seriousness of the offense and that he could be sentenced to the custody of the Department of Youth Services, who could keep him until his 21st birthday. To every one of these questions Joshua answered in the affirmative. Finally, when asked if his attorney answered all of his questions, he, again, replied yes.
The trial court then stated:
 Okay. Okay, well, I'll find then that your plea has been voluntarily entered then. I'll accept your admission.
 Based on the foregoing exchange, we find that the appellant has not proven plain error. Therefore, the appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II
Joshua J. Smith was denied his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Ohio Constitution in that he was adjudicated delinquent while incompetent to stand trial.
Under his second assignment of error, the appellant alleges that he was denied due process of law because the trial court failed to make a determination as to his competency prior to adjudication. The appellant's trial counsel, prior to entering a plea of admission, never raised the issue of Joshua's competency, nor did he object to the fairness of the proceedings in light of Joshua's diminished mental capacity. Because the appellant failed to preserve the error by raising an objection, we will review the issue for plain error.[14]
Deep-seated notions of due process stressed by the United States Supreme Court and the Supreme Court of Ohio require that an incompetent criminal defendant may not be tried or convicted of a crime.[15]
Although Josh is not a criminal defendant, "the right not to be tried while incompetent" is as fundamental to juvenile proceedings as it is to criminal trials of adults.[16]
The Fourteenth Amendment test for competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him."[17] Pursuant to R.C. 2945.37(G), in a court of common pleas, there is a presumption that a defendant is competent to stand trial unless the defendant demonstrates by a preponderance of the evidence that "because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." A juvenile court may order a mental examination following the filing of the complaint "[w]here a party's legal responsibility for * * * the party's competence to participate in the proceedings is an issue."[18] "While Juv.R. 32(A)(4) provides that the court may order a mental examination where competency is in issue, no statutory standard has been enacted to guide competency determinations in juvenile proceedings."[19] This court, however, has concluded that the adult competency standard of R.C. 2945.37 should apply equally to juveniles provided that juveniles are assessed by juvenile rather than adult norms.[20]
Prior to the dispositional hearing, the trial court ordered Joshua to undergo a psychological evaluation for assistance in determining his placement. JRC was considered a possible placement but concerns were expressed as to whether they would accept him. It was mentioned that their program involves a lot of reading and Joshua's reading ability was below average. Therefore, Joshua was referred to the Court Diagnostic 
Treatment Center where he was given a psychological evaluation. Dr. Forgac, the psychologist conducting the evaluation, concluded that "[i]t would be safe to assume that Josh's functioning falls within the upper range of mild mental retardation to the lower range of borderline intellectual functioning."
Although there are circumstances under which a detailed inquiry into a juvenile's mental competency would be warranted, the United States Supreme Court has held that mental retardation does not necessarily preclude competency or relinquishment of jurisdiction.[21] This is a decision which must be left to the juvenile court to decide after observing the child's demeanor and how well the child appears to understand the proceedings.[22]
In the present case, the trial court evidently concluded that the appellant understood the rights that were recited to him and the significance of their waver. Having read the transcript ourselves, we find nothing that would indicate the contrary. We cannot say that appellant has shown that he was incompetent to waive his rights and enter a plea of admission. Therefore, the appellant has not shown plain error. The appellant's second assignment of error is without merit.
 ASSIGNMENT OF ERROR NO. III
The trial court erred when it failed to enter a disposition on the record in Joshua J. Smith's presence at the conclusion of the dispositional hearing in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Crim.R. 43.
Under the third assignment of error, the appellant contends that the trial court failed to inform him of the minimum and maximum commitment that he was to receive at DYS and thus failed to sentence him on the record in open court. As a result, the appellant argues that Joshua's rights with respect to Crim.R. 43 have been violated. We disagree.
Crim.R. 43 requires that the accused be present at every stage of the trial. The record shows that the appellant was present at all four hearings. In fact, with the exception of the initial hearing where the appellant appeared without representation, the appellant was present with an attorney. His mother was also present at all four hearings.
The appellant leads off his third assignment of error arguing that he was not present at sentencing. The appellant later concedes, however, that though he was present at the dispositional hearing, the trial court failed to inform him of the terms of his sentence. Yet, twice the trial court explained the seriousness of the crime and the sentence to the appellant prior to the final hearing. On June 11th, when Josh entered an initial plea of denial, the court explained that he was being charged with a felony of the first degree and that, if convicted, the "Department of Youth Services would have the right to keep you until age 21, but could not release you sooner than one year without the court's consent." One week later, the trial court reiterated the consequences of admitting to a first degree felony, if committed by an adult. The trial court stated:
 [O]ne of the things that the court could do would be to permanently commit you to the custody of the Ohio Department of Youth Services. That's the agency that runs institutions for delinquent youth. And if you were committed to their custody they would have the right to keep you until your 21st birthday, but cannot release you sooner than one year without the court's consent.
 The court then accepted Josh's plea of admission. At the disposition hearing, the trial court informed Josh, with his attorney and mother present, that it was "going to go ahead and make the commitment to the Department of Youth Services."
In light of the above facts, we find that the trial court sentenced the appellant in open court and advised him of the minimum and maximum sentences. Therefore, the appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV
Joshua J. Smith was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.
For his final assignment of error, the appellant asserts that he was denied effective assistance of counsel when his trial counsel failed to request to withdraw Joshua's admission to the charges and request a competency evaluation and hearing. A showing of ineffective assistance of counsel requires a defendant to show that his trial counsel was deficient and that such deficiency prejudiced the defense.[23] In a criminal case, the failure to file a motion, in and of itself, is not perse ineffective assistance of counsel.[24] A defendant must prove that counsel was deficient for failing to make certain motions and that such motions had a reasonable probability of success.[25] Similarly, the appellant must show that his trial counsel was deficient for failing to make the aforementioned requests and that such requests had a reasonable likelihood of success.
The appellant contends that defense counsel was put on notice that Joshua was a low-functioning individual before the disposition hearing. At the adjudication hearing on June 18th, the court held a discussion about possible placement for Joshua and the issue of his IQ score was raised. The court questioned whether JRC would take him because of his limited reading ability. Thus, as previously mentioned in the second assignment of error, the court ordered him to undergo a psychological evaluation. Joshua received a mental age score of 10.0 years when he was almost fourteen years, ten months old and had an estimated IQ score of 69. Dr. Forgac noted that Joshua responded to his questions, his speech was spontaneous, and he remained attentive and cooperative. Dr. Forgac's report also indicates that Joshua apparently knew the difference between right and wrong because the first time the police questioned him he lied about touching his sister.
In addition to Dr. Forgac's analysis of the appellant, the trial judge also had the opportunity to speak with Joshua and ascertain whether he understood the offense for which he was being charged and the significance of entering a plea of admission. If the trial judge observed that Joshua lacked the competency to enter the admission, he had a legal and ethical duty to vacate the plea or to inquire as to Josh's understanding of the proceedings. The trial judge did not so find.
The only time Joshua's competency was raised was when the time came to decide his placement. Despite his low-level learning capacity, all of the evidence before us indicates that Joshua was cognizant of the events unfolding before him during each of the hearings. Therefore, we conclude that his trial counsel was not deficient for failing to request to withdraw Joshua's admission to the charges and request a competency evaluation and hearing.
Accordingly, the appellant's fourth assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
SHAW, P.J. and WALTERS, J., concur.
[1] In re Williams (1997), 116 Ohio App.3d 237, 240.
[2] Id.; Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
[3] (1985), 18 Ohio St.3d 220, 223.
[4] Williams, 116 Ohio App.3d at 241; State v. Waddell (1996),75 Ohio St.3d 163.
[5] Bellotti v. Baird (1979), 443 U.S. 622, 633; In re Gault (1967),387 U.S. 1, 13.
[6] Bellotti, supra at 634; also see Breed v. Jones (1975), 421 U.S. 519,528-529; McKeiver v. Pennsylvania (1970), 403 U.S. 528, 531.
[7] In re Miller (1997), 119 Ohio App.3d 52, 57;
[8] In re Clark (2001), 141 Ohio App.3d 55, 59; In re West (1998),128 Ohio App.3d 356, 359.
[9] Id.
[10] Id.; State v. Nero (1990), 56 Ohio St.3d 106.
[11] Juv.R. 29(B)(1).
[12] Juv.R. 29(B)(2).
[13] State v. Dailey (May 9, 2000), Hancock App. No. 5-99-56,unreported, citing Chapman v. California (1967), 386 U.S. 18, andDelaware v. Van Arsdall (1986), 475 U.S. 673.
[14] Williams, 116 Ohio App.3d at 240.
[15] Pate v. Robinson (1966), 383 U.S. 375; State v. Berry (1995),72 Ohio St.3d 354, 359, reconsideration denied, 73 Ohio St.3d 1428, certiorari denied, 516 U.S. 1097.
[16] Williams, 116 Ohio App.3d 237, 241.
[17] Dusky v. United States (1960), 362 U.S. 402.
[18] Juv.R. 32(A)(4).
[19] Williams, 116 Ohio App.3d at 242.
[20] State v. Settles (Sept. 30, 1998), Seneca App. No. 13-97-50,unreported. See, also, Williams, 116 Ohio App.3d 237.
[21] See Penry v. Lynaugh (1989), 492 U.S. 302.
[22] See In Re Jones (April 13, 2000), Gallia App. No. 99 CA 4, unreported.
[23] Strickland v. Washington (1984), 466 U.S. 668.
[24] See State v. Vires (1970), 25 Ohio App.2d 70; State v. Madigral(2000), 87 Ohio St.3d 378, 389; Kimmelman v. Morrison (1986), 477 U.S. 365,384.
[25] State v. Sheppard (2001), 91 Ohio St.3d 329, 330.