[Cite as *State v. Rogan*, 2022-Ohio-3577.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-34 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-90 |
| | : | |
| BRADLEY ALLEN ROGAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of October, 2022.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1717 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Bradley Allen Rogan appeals from his conviction, following his guilty pleas, of one count of domestic violence, a felony of the third degree, and one count of escape, a felony of the fifth degree. Rogan asserts that he received ineffective assistance of counsel based upon defense counsel's failure to request a competency evaluation. We will affirm the judgment of the trial court.

{¶ 2} Rogan was indicted on May 3, 2021, on the counts of domestic violence and escape referenced above, as well as two counts of criminal damaging or endangering (second-degree misdemeanors), one count of petty theft (a first-degree misdemeanor), an additional count of domestic violence, one count of tampering with evidence (a third-degree felony), and one count of possession of counterfeit controlled substances (a first-degree misdemeanor).

{¶ 3} At a May 19, 2021 scheduling conference, Rogan advised the court that he had felony charges pending in Union County. At the final pretrial conference on June 22, 2021, the State advised the court that the parties had reached a plea agreement, and the court scheduled the plea hearing for the following day.

{¶ 4} At the plea hearing, the prosecutor stated the two charges to which Rogan would plead guilty – one count of domestic violence and escape -- and stated that the other charges would be dismissed. Rogan told the court that he had been taking Remeron, Depakote, and Ibuprofen since he had harmed himself in the county jail, or for roughly one month. He stated that he had attempted suicide and had been admitted to Twin Valley Behavioral Healthcare for eight days. Defense counsel indicated that he had spoken to Rogan and jail officials about the incident. When asked if he believed that

competency to stand trial was an issue, defense counsel responded, "No, I have not experienced that." Rogan stated that he was satisfied with defense counsel's performance.

{¶ 5} Rogan stated that his pending charges in Union County were for failure to comply with an order or signal of a police officer, a felony of the fourth degree, and felonious assault, a felony of the second degree. Rogan also stated that he had a pending charge for driving under suspension in Logan County. Rogan indicated that he had been on post-release control in Champaign County at the time of the offenses herein and had been to prison five times.

{¶ 6} After his pleas were accepted, the court asked counsel about Rogan's mental health status and whether counsel anticipated filing a sentencing memorandum or introducing any mental health records or mental health evaluation. Defense counsel responded, "I will probably be introducing mental health records." The court advised defense counsel that "you could probably get a release of information from your client to release the Twin Valley records," and it suggested providing extended time before sentencing in order to obtain those records. The court scheduled sentencing for August 9, 2021.

{¶ 7} On August 4, 2021, defense counsel filed a motion to continue. The motion stated that Rogan had been ordered to undergo a competency evaluation by the court in Union County; a copy of the order from that court was attached. The motion also stated that Rogan had not yet been evaluated, but that the evaluation would "shed light on his mental health situation and thus be beneficial to the Court in sentencing," even if Rogan

were ultimately found to be competent. The court granted the motion.

{¶ 8} At the sentencing hearing on September 20, 2021, the court stated that it had reviewed the presentence investigation report, jail incident reports, and "the forensic information given by Netcare" in Rogan's Union County case with regard to competency and his mental condition at the time of those offenses. Defense counsel then advised the court that Rogan had asked counsel to make an oral motion to withdraw his guilty pleas. Counsel further stated that Rogan objected to the court's obtaining the Netcare Forensic Center Report, as he did not believe he authorized or signed a release for the Champaign County court to have access to that information. Defense counsel indicated that he had not requested the Netcare records, but he acknowledged that he had raised the issue of mental illness as a possible mitigating factor.

{¶ 9} Defense counsel also advised the court that he had obtained multiple documents from Twin Valley Behavioral Healthcare, which he had originally planned to use at sentencing, but that, in his opinion, the summary from the Union County case "summarized the history better," and he had then intended to rely on that summary. But he also wanted the court to be aware of Rogan's objection to the Union County information.

{¶ 10} The court asked defense counsel if Rogan's objection to the Union County information had to do with "not innocence at this point, but information outside the incident that could be used against him," and counsel responded affirmatively. Defense counsel acknowledged that if the report were excluded, the matter would be "cured," in which case he would asked for a continuance to "prepare additional documents to present to the

Court," but counsel acknowledged that he had copies of the Twin Valley documents in his possession.

{¶ 11} The court indicated that it had been "the court's belief and, apparently erroneous belief," that defense counsel wanted the court to have the Union County information. The court stated to Rogan that it could order the parties to disregard any information in the Netcare report "as if it never existed and just move forward on the Twin Valley information," and Rogan indicated his understanding. Upon further discussion of Rogan's objection to use of the information without his consent, the court advised Rogan that it had called Union County to find out when he was going to be evaluated, and "[t]hey end up sending us both evaluations. I don't know why they did. And I'm not - - it is nobody's fault. It is just how it happened."

{¶ 12} After Rogan conferred with defense counsel, counsel advised the court that Rogan was willing to proceed with sentencing and did not object to the use of the Netcare Forensic Report at sentencing. Counsel clarified that Rogan did not object to the use of both the NGRI report and the competency report. Rogan advised the court that he had reviewed both reports and would like the court to consider them. He also stated that he wanted to withdraw his motion to withdraw his pleas.

{¶ 13} The court proceeded to sentencing. The prosecutor made a statement and informed that court that, although the victim did not present a victim impact statement, she had indicated that she would like the court to consider treatment as opposed to punishment for Rogan. The State requested a concurrent sentence of 36 months for domestic violence and 10 months for escape.

**{¶ 14}** Defense counsel "echo[ed] what the victim is asking for here," requesting treatment for Rogan's mental health issue. Counsel also referenced the Twin Valley documents, which were marked as Exhibit A.

**{¶ 15}** Defense counsel then stated:

Your Honor, I think by examining the report of Dr. Hrinko, that the Court obtained from Union County, as well as Defendant's Exhibit A, there is clear evidence of mental illness here. And, quite frankly, we had the discussion earlier about whether to get Dr. Hrinko's report and allow it to be presented to the Court. I suggested to Mr. Rogan the only reason I wanted it presented is because it clearly states that he suffers from a mental illness. And I think it incapsulates, basically, the gist of everything with him. He's had multiple suicide attempts in the jail. He suffers from a whole host of diagnoses and [has] medications he has to take.

I would suggest to the Court, if the Court turns to the third page of Defendant's exhibit A, we can see some of the diagnoses there almost two-thirds of the way down. It says diagnoses as of May 18, 2021. Adjustment disorder mixed disturbance emotional condition, post-traumatic stress disorder, cannabis abuse uncomplicated, bipolar disorder unspecified, other stimulant abuse uncomplicated, personal history of traumatic brain injury, problems related to other legal circumstance, personal history of self-harm, malingerer conscious simulation, and anti-social personality disorder.

I believe, also, in Dr. Hrinko's report there was references to - - were references * * * to additional difficulties that Mr. Rogan suffers.

{¶ 16} Defense counsel suggested that "probation or community control is the way to deal with these issues. Obviously, Mr. Rogan needs some extensive counseling." Defense counsel also stated that substance abuse counseling would be helpful. Defense counsel offered to "come back [in order to] better address this in the form of community control enabling him to get the help that he needs rather than simply going to a state institution and allowing these issues to linger until he gets out at a later date. * * *"

{¶ 17} The court paused the proceedings to review Exhibit A. The court advised Rogan that it appreciated "the questions you had at the start of this hearing as to how we got the Netcare information."

{¶ 18} At sentencing, the trial court said that it had considered the PSI but was "not relying" on the Netcare information for sentencing purposes. The court acknowledged that it would not be conducting the sentencing hearing if Netcare had found Rogan incompetent to stand trial, but insofar as it did find him competent, the court found that the Netcare information was not relevant and that Exhibit A (the Twin Valley records) was "a little more thorough for our purposes." Similarly, in its judgment entry, the trial court stated that the Netcare evaluation had only been considered to evaluate whether there was a competency issue, and that, "[d]ue to the availability of the Twin Valley Behavioral Healthcare Records, and the Defendant's concerns regarding release of the Netcare Evaluations to this Court, the Court elected not to utilize the specific information contained therein for sentencing purposes."

{¶ 19} The trial court found Rogan guilty of domestic violence and escape pursuant to his pleas. It imposed a sentence of 36 months for domestic violence and 12 months for escape, to be served concurrently. The court also imposed fines and court costs.

{¶ 20} Rogan raises one assignment of error on appeal:

TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO REQUEST A COMPETENCY EVALUATION OF DEFENDANT-APPELLANT AT ANY POINT DURING THE PROCEEDINGS.

{¶ 21} Rogan asserts that counsel was ineffective in not requesting a competency or not guilty by reason of insanity evaluation "[e]ven though [his] mental state was clearly of a questionable nature throughout the entire duration of these proceedings." He points out that his counsel in his Union County case had believed that his mental status was "questionable enough" to request such evaluations.

{¶ 22} According to Rogan, trial counsel's reliance on the competency evaluation that was completed in the Union County proceedings and on medical records from the psychiatric facility to which he was admitted when he attempted suicide while in the county jail presented "copious, uncontested information" about mental health and ability to understand, such that trial counsel "clearly fell below the 'wide range of reasonable professional assistance' when he failed to request a competency evaluation" prior to Rogan's plea.

{¶ 23} Anticipating that the State would argue that this Court should not consider this issue since the Union County evaluation concluded that he was competent, Rogan argues that a different doctor might have come to a different conclusion. He also points

out that the trial court recognized that he had "previously responded very well when he [was] under constant watch and care of medical professionals" and that such supervision "would be the most beneficial" to Hogan. However, the court further found that it did not have the resources or the programming to order that type of supervision for someone on community control, such that incarceration was really the only option. Rogan argues that if he had been evaluated and found incompetent, then under R.C. 2945.38, he "would have been ordered into the exact type of treatment that the Court found was favorable" but that it could not provide through community control sanctions. Finally, Rogan asserts that the severity of his mental health issues should overcome the presumption that trial counsel's failure to request a competency evaluation was sound trial strategy.

{¶ 24} The State responds that defense counsel was an experienced and competent attorney and that his request for a continuance reflected that he believed that the content of the Union County evaluations might "help in mitigation at sentencing" but did not support a finding that Rogan was incompetent or insane at the time of the offense or of the plea. According to the State, "the record does not reflect that the trial court noted any observation of instances of mental incompetency from the behavior or statements of [Rogan] at hearings," and if it had, it could have held a hearing on the issue on its own motion. The State asserts that there was little evidence in the record of Rogan's "**legal incompetence**, which encompasses an understanding of the nature and objective of the proceedings against him and being capable of assisting in his defense, or even evidence of his insanity at the time of the offense." (Emphasis sic.) The State also argues that Rogan's assertion that another evaluator may have reached a different

conclusion was purely speculative and that Rogan did not "point to any particular basis on which to challenge the substance of the two reports from Union County." As such, the State concludes that there was no reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged "failure" to raise Rogan's alleged mental incompetency or insanity. Finally, the State notes that Rogan does not claim that his plea was not knowing or voluntary, citing *State v. Pepper*, 2d Dist. Miami No. 2013-CA-6, 2014-Ohio-3841.

{¶ 25} "To prevail on an ineffective assistance claim, a defendant must establish: (1) that his or her trial counsel's performance was deficient and (2) that the deficient performance resulted in prejudice." *State v. Treece*, 2d Dist. Montgomery No. 29258, 2022-Ohio-1610, ¶ 7. Moreover, a plea of guilty waives any claim that the accused was prejudiced by ineffective assistance of trial counsel, except to the extent that the ineffectiveness alleged may have caused the plea to be less than knowing, intelligent, and voluntary. *State v. Stivender*, 2d Dist. Montgomery No. 23973, 2011-Ohio-247, ¶ 15, citing *State v. Barnett,* 73 Ohio App.3d 244, 596 N.E.2d 1101 (2d Dist.1991). The focus of that inquiry is the procedures by which the accused's constitutional rights were waived. *Id.*, citing *State v. Kelley,* 57 Ohio St.3d 127, 566 N.E.2d 658 (1991); *see also Pepper* at ¶ 8.

{¶ 26} As the State points out, Rogan does not allege that his pleas were not knowing, intelligent, and voluntary. Moreover, we agree that deficient performance by defense counsel and prejudice are not demonstrated. Our thorough review of the plea hearing transcript reflects that Rogan's guilty pleas were, in fact, knowing, intelligent, and

voluntary.   "The constitutional test under the Fourteenth Amendment for competency to stand trial is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – whether he has a rational as well as factual understanding of the proceedings against him.' " (Citation omitted.)   *In re Williams*, 116 Ohio App.3d 237, 241-42, 687 N.E.2d 507 (2d Dist.1997).   A "defendant is presumed to be competent."   *Id.* at 242.   Rogan consulted with defense counsel at both hearings and he indicated his understanding thereof repeatedly.   He stated that he was satisfied with defense counsel's performance.   When asked by the court if he believed that competency to stand trial was an issue, defense counsel responded, "I have not experienced that."   We find that Rogan mischaracterizes the record when he asserts that the trial court "found that [his] competency was questionable."   The trial court clearly understood Rogan to be competent.   He was found to be competent in Union County on July 7, 2021.   Finally, we agree with the State that Rogan's argument that a second competency evaluation in Champaign County might have found him incompetent is speculative.   Based upon the foregoing, Rogan's assignment of error is overruled.

{¶ 27} The judgment of the Champaign County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Jane A. Napier
Kristin L. Arnold

Hon. Nick A. Selvaggio