JOURNAL ENTRY and OPINION.
 I. {¶ 1} Defendant-appellant Byron Young was convicted of aggravated murder without prior calculation and design and of child endangering after his daughter was found stabbed on November 30, 2000. The three-year-old died two days later. Young was sentenced to 28 years in prison. For the reasons set forth below, we affirm the judgment of the trial court.
 II. {¶ 2} Evidence presented by the state shows that Young and his girlfriend Jewell were not getting along. Jewell, the mother of their child, asked Young to move out of their apartment. On November 28, 2000, Jewell brought their daughter to Jewell's parents' house while she worked. On November 29th, Young came to the house and asked to take his daughter. Jewell's father Lester Brantley declined. Later that night, Young again came to the house and Brantley agreed to accompany them to the store. When they got in the car, Young told Brantley that he had forgotten his cigarettes in the house. When Brantley went inside to get the cigarettes, Young drove off with his daughter in the car. Young took his daughter to Nakisha Lewis's house. Lewis testified that when Young and his daughter returned from getting something to eat, Young looked high. Later, a neighbor of Lewis asked that Young's car be moved. Because Young did not feel like moving it, Lewis moved the car. When she returned, it appeared to her that the apartment was empty. She then found the victim in her closet. The victim had been stabbed a number of times and was kept alive for two days on life support before a decision was made to discontinue it.
 {¶ 3} Young was charged with two counts of aggravated murder and two counts of child endangerment. After a jury trial, Young was convicted of one count of aggravated murder without prior calculation and design and one count of child endangering. Young now brings four assignments of error for this court's review.
 III. First Assignment of Error {¶ 4} Assignment of Error No. I: The trial court's finding that appellant was competent to stand trial violated the Fourteenth Amendment right to due process of the U.S. Constitution.
 A. {¶ 5} Before trial, Young's counsel argued that he was incompetent to stand trial. Both Young and the state submitted expert reports, which disagreed as to Young's competence. At a pretrial hearing, the state's expert, Dr. Phillip Resnick, was questioned. He concluded, that although he would defer to one more experienced regarding a mental retardation question, he could conclude regardless of a mental retardation finding, that Young was competent to stand trial and based his conclusion on the definition of competency found in R.C. 2945.371. Dr. Resnick conceded that "it was a close call" and found Young "just competent." Finally, Dr. Resnick suggested that it would be helpful if the judge and counsel would use "a little more simplified language" and provide "a bit longer breaks or more frequent breaks, so that [his] attorneys would have an opportunity to explain things to Mr. Young to kind of compensate for his concreteness [i.e., limited ability to think abstractly] and deficits which may occur in his memory." Dr. Resnick also told the court that Young could be educated between that time and trial and that Young's attorneys had been doing a nice job of doing that. Dr. Resnick's conclusions were based on seeing Young for one hour and forty minutes, fifteen minutes of which consisted of Dr. Resnick talking to defense counsel on the phone.
 {¶ 6} Young's expert Dr. James Karpawich saw Young on five different occasions for a total of eleven hours. Dr. Karpawich testified that Young had difficulty following simple commands, difficulty concentrating, had poor memory and difficulty reasoning abstractly. Relative to the abstract reasoning, Dr. Karpawich testified that Young would not be able to stand trial because he would be unable to "appreciate the importance of information given by his attorney" and would "have difficulty weighing consequences[.]" Dr. Karpawich also administered the Competence Assessment for Standing Trial for Defendants with Mental Retardation ("CAST-MR").
 {¶ 7} Dr. Karpawich further testified about Young's comprehension of the trial itself. Young knew that he was charged with murder, but did not know what "aggravated meant[;]" knew that he could receive the death penalty or a life sentence; did not have any recollection of his behavior on the day of the offense or the next two days; understands the difference between the pleas of guilty and not guilty; believed that his attorneys were supposed to explain what kind of man Young was rather than to deal with the charges against him; he understood that the prosecutor was against him, but did not understand how evidence was presented; that he would not consider a plea bargain, maintaining that he did not kill his own daughter; that he wanted to testify; that basically "even though he knew the basic roles of courtroom individuals, he really had a difficult time when I explained how the whole legal process works, to weigh different alternatives." Dr. Karpawich concluded that Young is "not capable of understanding the nature and objectives of the proceedings against him or of assisting in his defense."
 {¶ 8} On cross-examination, Dr. Karpawich conceded that the IQ score that he administered was not enough alone to render Young incompetent. Dr. Karpawich made much of the fact that Young could not recount events, but acknowledged Young's admission of being on drugs during those events.
 {¶ 9} The trial court found Young competent to stand trial.
 B. {¶ 10} When deciding whether the trial court erred in finding a defendant competent to stand trial, this court must decide whether there was sufficient credible evidence upon which the trial court made that determination. See In re Williams (1997), 116 Ohio App.3d 237, 242 andState v. Allen (Oct. 6, 1983), Cuyahoga App. No. 46059.
 {¶ 11} Here, we hold that there was sufficient credible evidence upon which the trial court could conclude that Young was competent to stand trial. The court found that Young had a good understanding of the legal process and that his misunderstandings were not uncommon. The court mentioned that many jurors do not fully understand the process when they arrive and that many lawyers talk over the heads of jurors and their clients. Further, the court found some of the defense expert's questions to be subjective and open to different answers. Finally, the court found that Young's depressive attitude and his unwillingness to consider a plea bargain can be construed as the attitude of one who believes himself innocent.
 {¶ 12} The trial court made this determination based upon the reports and testimony of the experts. While the state's expert Dr. Resnick admitted that it was a close call, he did, based on his observations of Young, find Young to be competent. The trial court apparently found the state's expert more persuasive and since the expert's findings are sufficient credible evidence, the trial court did not err in finding Young competent to stand trial.
 C. {¶ 13} At the end of this assignment of error, Young asserts that his trial counsel's failure to request a third evaluation constituted ineffective assistance of counsel. This argument has no merit since Young had an evaluation done by an expert who testified to the trial court that Young was incompetent to stand trial. The trial court found otherwise. Further, a defendant has no absolute right to an independent psychiatric evaluation. State v. Marshall (1984), 15 Ohio App.3d 105.
 IV. Second Assignment of Error {¶ 14} Assignment of Error No. II: The appellant's sentences for Count 1 [aggravated murder] and Count 3 [child endangering] should have been merged under R.C. 2941.25 and it was plain error under Crim.R. 52 not to merge the sentences.
 A. {¶ 15} Young argues that the sentences for aggravated murder and child endangering should have been merged since, pursuant to R.C. 2941.25, the offenses are allied offenses of similar import.[1] Further, Young argues that the failure to raise this issue at trial is irrelevant under the plain error doctrine.
 B. {¶ 16} First, we must discuss the plain error doctrine. "Under Crim.R. 52(B), `plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Statev. Barnes (2002), 94 Ohio St.3d 21, 27 (internal citations and quotations omitted).
 {¶ 17} Because we determine that there was no error in the first place, we hold that, under the plain error doctrine, the trial court did not err in failing to merge the sentences.
 C. {¶ 18} In construing R.C. 2941.25, the Supreme Court stated: "The applicable test for deciding that issue is as follows: If the elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import. * * * If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." State v. Rance (1999),85 Ohio St.3d 632, 636 (internal quotation marks and citations omitted). Further, "comparison of the statutory elements" is to be done "in the abstract." Id.
 {¶ 19} The child endangering statute reads in relevant part: "No person, who is the parent * * * having custody or control * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A).
 {¶ 20} The aggravated murder statute reads in relevant part: "No person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense." R.C.2903.01(C).
 D. {¶ 21} We conclude, considering the statutory elements in the abstract, that the offenses do not "correspond to such a degree that the commission of one crime will result in the commission of the other."Rance at 636. Quickly stated, child endangering requires that one in control or custody of a child under eighteen creates a substantial risk to the child, while aggravated murder requires that one purposefully cause the death of a child under thirteen. It is possible to commit one crime without committing the other. See State v. Richey (1992),64 Ohio St.3d 353, 369. Therefore, there was no error and the trial court properly did not merge the sentences.
 V. Third Assignment of Error {¶ 22} Assignment of Error No. III: The admission of other acts evidence deprived the appellant of due process under theFourteenth Amendment of the U.S. Constitution.
 A. {¶ 23} Here, Young argues that the trial court improperly allowed other acts evidence in violation of R.C. 2945.59, Evid.R. 404 and theFourteenth Amendment. Specifically, Young argues that the trial court improperly allowed the following evidence: that Young had violated his probation; had jumped at the victim's mother after he got out of jail; had threatened the victim's mother; that he did not deny killing his daughter in a conversation Young had while in jail; that he offered a woman money to beat up the victim's mother; that he asked a woman if he could stay at her house if he killed two people; and that he wanted to kill a man over an argument about a compact disc.
 B. {¶ 24} Except for the testimony regarding Young's probation violation, defense counsel failed to object to the admission of the testimony at issue in this assignment. Therefore, we will again apply the plain error doctrine to that testimony not objected to. Therefore, we must determine (1) whether there was error in the first place; if so, (2) whether the error is an obvious defect in the trial proceedings; and (3) whether the error affected the outcome of the trial.
1. Probation Violation
 {¶ 25} Evidence regarding Young's probation violation was brought forth when the victim's grandfather testified that Young came to his (the grandfather's) house asking to see the victim. Young explained that he wanted to see his daughter before he turned himself in for violating his probation. It was not offered to prove Young's bad character, but rather to show motive: i.e., that Young did indeed seek custody of his daughter soon before her murder and that his options were running out since he believed he would be going back to jail. This evidence was properly admitted and the trial court correctly overruled defense counsel's objection.
2. Plain Error
 a. {¶ 26} Young relies on R.C. 2945.59 and Evid.R. 404(B), which allows evidence of other acts to show, among other things, proof of the defendant's motive, plan, or the absence of mistake.[2]
Young does not explain how R.C. 2945.59 should have prevented the evidence from being admitted. Indeed, much of the evidence about which Young complains — the threats, the planning to hide if he killed someone, the offer of money to another to beat up Jewell — shows motive, the absence of mistake and Young's plan. There was no error in the admission of this evidence.
 b. {¶ 27} Young further argues that the testimony, that in a conversation from jail he did not deny killing his daughter, should not have been admitted. A review of the transcript shows merely that, on the advice of his lawyers, Young declined to talk about whether he killed his daughter. It was not improper for this testimony to be admitted.
 c. {¶ 28} Finally, Young objects to the admission of testimony about Young threatening to kill a man over a compact disc. This evidence came in during discussion of Young's talk with his friend, whom Young asked to beat up Jewell. The talk included Young's frustration with not being able to see his daughter. His friend further testified that Young stated that he felt like killing someone and later that he wanted to kill a man over a compact disc. This conversation took place a week or two before the murder of Young's daughter. While there is support for the argument that this evidence was offered to show Young's violent character, ultimately, it shows that Young was upset about the situation with his former girlfriend and daughter.
 {¶ 29} At the very most, the admission of this evidence falls under the third prong of the plain error analysis: whether the error affected the outcome of the trial. In light of the other evidence showing Young's guilt, the exclusion of evidence of his threat to kill a man over a compact disc (which took place days before Young's daughter was murdered) would not have affected the outcome of the trial.
 VI Fourth Assignment of Error {¶ 1} Assignment of Error No. IV: The trial court improperly allowed expert testimony in violation of Evid.R. 702 and theFourteenth Amendment of the U.S. Constitution.
 A. {¶ 2} Again Young urges this court to find error under the plain error doctrine. Here, Young argues that the trial court improperly allowed into evidence the expert testimony of a fingerprint examiner and a forensic pathologist. Generally, Young argues that neither witness was qualified pursuant to Evid.R. 702(C). Specifically, Young questions the standard by which the fingerprint examiner made her determinations and "challenges" the forensic pathologist's opinion that the attacker was right-handed and his opinion concerning the nature of the attack.
 {¶ 3} Once again, under the plain error doctrine, we must determine (1) whether there was error in the first place; if so, (2) whether the error is an obvious defect in the trial proceedings; and (3) whether the error affected the outcome of the trial. When the issue of the trial court's determination as to the qualifications of an expert witness arises, a reviewing court will not overturn the trial court's determination unless there is an abuse of discretion. State v. Hartman
(2001), 93 Ohio St.3d 274, 285; State v. Williams (1983), 4 Ohio St.3d 53,58.
 B.
1. Evidence Rule 702
 {¶ 1} In determining whether a trial court properly determined that the fingerprint examiner and the forensic pathologist were qualified as experts, the trial court must follow the dictates of Evid.R. 702. Under Evid.R. 702, a "witness may testify as an expert if all of the following apply:
 {¶ 2} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 3} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 4} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 5} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 6} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 7} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
2. Fingerprint Examiner
 {¶ 8} Young argues that the fingerprint examiner was not qualified as an expert because the state failed to comply with Evid.R. 702(C). Specifically, Young argues that the fingerprint examiner offered no testimony concerning the acceptable number of points of comparison to constitute a match. Therefore, Young continues, the state failed to support the method by which the examiner matched Young's fingerprints to those found in the apartment where the victim was found.
 {¶ 9} In determining the reliability of scientific evidence, the Supreme Court has designated the following four factors to be relevant, though not determinative: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. State v. Nemeth (1998),82 Ohio St.3d 202, 211, (citations omitted).
 {¶ 10} The examiner testified that "I make the comparison by looking at points of identification. It could be a dot. It could be a line, a ridge that goes and divides. It's called a bifurcation. That's an island that we look at which is just a short ridge. Also, what I do, I just look at the points of identification that has to occupy the same relative space and position from the latent card to the known temperature card." (Tr. 2002-2003.) She also testified that she was trained by the FBI; that she is employed by the Cleveland Police Department's Scientific Investigation Unit, where she is employed as a fingerprint examiner; and that she has done fingerprint identification thousands of times.
 {¶ 11} It is clear that the examiner's method used here was an accepted method. She explained that she followed standard procedure in determining the fingerprint match here. In other words, the fingerprint examiner was qualified to testify as an expert pursuant to Evid.R. 702(C). This argument is not well taken.
3. Forensic Pathologist
 {¶ 12} Here, Young argues that the pathologist was unqualified to testify as an expert witness because (1) there was no evidence that he had any specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony (Evid.R. 702(B)) and because (2) he "did not testify concerning the * * * evidence based on any procedure, test or experiment that could have formed the basis of" his opinion (Evid.R. 702(C)). The pathologist testified that the attacker was right-handed and further opined as to how the injuries were suffered.
 {¶ 13} First, we hold that there was evidence to show that the pathologist here had specialized knowledge, skill, etc. He testified:
 {¶ 14} "I received my medical degree from the University of Health Sciences in Kansas City, Missouri in 1992. I did a one-year osteopathic rotating internship from 1992 to 1993 at Wilson Memorial Hospital in Johnson City, New York. From 1993 to 1997, I did a residency training program in anatomical pathology and clinical pathology at the Cleveland Clinic Foundation here in Cleveland, Ohio. And from 1997 to 1998 I did a one-year fellowship training in forensic pathology at the Cuyahoga County Coroner's Office.
 {¶ 15} "I am board certified in anatomical pathology, clinical pathology and forensic pathology, and I am licensed by the State of Ohio to practice medicine. And to date I have done 787 autopsies." Further, he had testified 27 previous times giving his opinion about the "method and manner of death."
 {¶ 16} Young is therefore incorrect that there was no evidence to show that the pathologist had specialized knowledge and skill to testify as an expert. In fact, he had more than enough qualifications: "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." Hartman at 285.
 {¶ 17} Secondly, Young's argument that there was no reliable method used here is also unpersuasive. Again, the pathologist had performed almost 800 autopsies prior to the one conducted here. Further, the pathologist testified that forensic pathology "is the branch of medicine that applies the medical sciences to problems that arise from the legal field." These arguments are not well taken.
 C. {¶ 18} Therefore, there was no error in qualifying the fingerprint examiner and the forensic pathologist and, under the plain error doctrine, the analysis is at an end. This assignment is not well taken.
 VII. Conclusion {¶ 19} We find none of Young's assignments of error persuasive and we therefore affirm the judgment of the trial court.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] {¶ a} § 2941.25 Multiple counts.
{¶ b} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
{¶ c} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
[2] {¶ a} R.C. 2945.59 states: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
{¶ b} Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."