DISSENTS SAYING:
 {¶ 20} I respectfully dissent. John is a twelve year old boy who is mildly mentally retarded with an IQ of 63. He is bipolar and has Attention Deficient Hyperactive Disorder. Under the totality of circumstances here, I cannot say that John's admission was knowingly, intelligently and voluntarily made and/or that he received effective assistance of counsel. Consequently, the trial court erred in not granting his motion to withdraw his admission of guilt.
With regard to a juvenile's entry of an admission, Juv.R. 29(D) provides, in relevant part:
"The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
"(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
"(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
 {¶ 21} The record here does not support that Appellant voluntarily, knowingly, and intelligently entered an admission of guilt under Juv.R. 29(D).
"The best method for the trial court to comply with Juv.R. 29(D) is to use the language of the rule itself, `carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows that he is waiving it by entering an admission.'" In reMiller (1997), 119 Ohio App.3d 52, 58, 694 N.E.2d 500, citingState v. Ballard (1981), 66 Ohio St.2d 473, 479,423 N.E.2d 115.
 {¶ 22} "The juvenile court's failure to substantially comply with the requirements of Juv.R. 29 constitutes prejudicial error that requires reversal of the adjudication in order to permit the party to plead anew." In re Adams, 2003 Ohio 4232, 7th
Dist. Nos. 01 CA 237, 01 CA 238, 02 CA 120, citing In reBeechler (1996), 115 Ohio App.3d 567, 573, 685 N.E.2d 1257.
 {¶ 23} The trial court's colloquy did not satisfy these requirements. Regarding Juv.R. 29(D)(1)'s requirement that the trial court make a determination that the child understands the nature of the allegations against him. The only question asked of John was as follows: "John, you have the right to have a trial on the new charge of rape . . ." The trial court did not discuss with John the nature of the charge, did not explain the elements or read the complaint.[1]
"[T]he court is not required to give a detailed explanation of each element of the offense brought against the juvenile or to ask if the juvenile understands the charge, but instead it must ensure that the juvenile has some basic understanding of the charge. In re Flynn (1995), 101 Ohio App.3d 778, 782,656 N.E.2d 737.
"The analysis employed in determining whether the juvenile has a basic understanding of the charge is similar to that used in Crim.R. 11 determinations of whether the criminal defendant has an understanding of the nature of the charges against him. In re Jordan, 11th Dist. No. 2001-T-0067, 2002 Ohio 2820, P10. Under Crim.R. 11 a familiarity with the facts alleged relating to each count of the crime charged is enough to provide the defendant with knowledge of the nature of the crime. State v. Philpott (Dec. 14, 2000), 8th Dist. No. 74392, 2000 Ohio App. LEXIS 5849, citing State v. Elofskey (May 6, 1994), 2d Dist. No. 13970, 1994 Ohio App. LEXIS 1922." In Re Adams, supra.
 {¶ 24} Nothing was done by the trial court here, other than telling John he had a new charge of rape. The court should have explained the nature of the charges against John. See, In reOrr (April 3, 2000), 5th Dist. No. 1999AP040032. Telling John he has a new charge of rape does not explain the nature of the allegations of the charge.
 {¶ 25} Moreover, the record does not adequately reflect whether John fully understood the consequences of his admission because the recitation of rights were not explained to him separately nor was he asked if he understood each right he was relinquishing. Instead, the court informed John of several rights together and then would inquire if he understood in total.
"The best method for the trial court to comply with Ohio R. Juv. P. 29(D) is to use the language of the rule itself, `carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows that he is waiving it by entering an admission.'" (Citations omitted.) In Re Graham,2002 Ohio 2407, 147 Ohio App.3d 452, at ¶ 11.
 {¶ 26} Explaining each right individually, stopping after each right and asking if the child understands it and knows he is waiving that right by entering an admission is especially critical in a case like the one instanter where a very young child with a low IQ and a mental illness is charged with a first degree felony.
 {¶ 27} Also, the record does not reflect that the trial court adequately determined if John understood the consequences of his plea as the court did not obtain a response from John as to some of the rights he was relinquishing. At the plea hearing, the magistrate stated: "You understand, John, that by admitting to these two charges, you give up your right to have a trial. That means witnesses won't be coming in because you admit you did these things. Do you understand?" There was no response and the magistrate proceeded on without obtaining an answer to this question.
 {¶ 28} Although substantial compliance with Juv.R. 29(D) is sufficient, the record does not demonstrate such compliance here. "A juvenile court's failure to substantially comply with Juv.R. 29 results in prejudicial error, thus requiring vacation of the admission and a remand for further proceedings." In re Adams at ¶ 27, citing In re Royal (1999), 132 Ohio App.3d 496,725 N.E.2d 685.
 {¶ 29} I am, also, troubled by the fact that John has consistently denied raping the other youth in the detention center with him. After he entered the admission, but prior to sentencing, John was interviewed for a court-ordered Offender Risk Assessment, a type of pre-sentence investigation. During this interview, John maintained his innocence, specifically indicating that he did not rape the other boy.
 {¶ 30} John claimed the other boy approached him first and asked "what would you do if I asked you to suck my thing?" Then both engaged in consensual oral sex. John claimed that each performed oral sex on the other.[2] Probation specifically reported to the court, prior to sentencing, that John denied raping the other boy.[3]
 {¶ 31} Finally, I feel counsel did not render effective assistance in not requesting a competency evaluation prior to John entering a plea.
"Consistent with the notion of fundamental fairness and due process, a criminal defendant who is not competent may not be tried and convicted. Pate v. Robinson (1966), 383 U.S. 375,15 L.Ed.2d 815, 86 S.Ct. 836; State v. Braden,98 Ohio St.3d 354, 374, 2003 Ohio 1325, 785 N.E.2d 439, citing State v.Berry, 72 Ohio St.3d 354, 1995 Ohio 310, 650 N.E.2d 433;Williams, 116 Ohio App.3d 237, 687 N.E.2d 507. Likewise, in juvenile proceedings, a juvenile who is not competent may not be adjudicated. In re Bailey, 150 Ohio App.3d 664, 667,2002 Ohio 6792, 782 N.E.2d 1177.
"The Fourteenth Amendment's test for competency to stand trial is `whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as a factual understanding of the proceedings against him.'Williams, 116 Ohio App.3d at 241-242, quoting Dusky v.United States (1960), 362 U.S. 402, 4 L.Ed.2d 824, 80 S.Ct. 788. Under Ohio's codification of this standard, `a defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense.' Williams,116 Ohio App.3d at 41-242; R.C. 2945.37(G). While Juv.R. 32(A)(4) provides that the court may order a mental examination where the issue of competency has been raised, it provides no standard to guide competency determinations in juvenile proceedings. However, the standard enunciated in R.C. 2945.37(G) has been held to govern the competency evaluations of juveniles so long as it is applied in light of juvenile rather than adult norms. Bailey,150 Ohio App.3d 15 667.
"* * *
"* * * Having a mental illness or being mentally retarded is not, in itself, enough to support a claim of incompetence. Id.;State v. Lewis (July 19, 1999), 12th Dist. No. CA98-10-207, 1999 Ohio App. LEXIS 3349; State v. Settles (Sept. 30, 1998), 3rd Dist. No. 13-97-50, 1998 Ohio App. LEXIS 4973, citing Penryv. Lynaugh (1989), 492 U.S. 302, 106 L.Ed.2d 256,109 S.Ct. 2934. See Atkins v. Virginia (200), 536 U.S. 304,153 L.Ed.2d 335, 122 S.Ct. 2242." In re Adams at ¶¶ 30, 31, and 33.
 {¶ 32} Here, we are not dealing with mental retardation or mental illness alone though. John not only has an IQ of 63 (mildly mentally retarded) he, also, is bipolar and suffers from ADHA.[4] A history of mental illness, including depression and schizophrenia, was reported in the family. According to the Offender Risk Assessment conducted, even though John is only twelve years old, he has been in trouble with the law since around age eight. John's history includes at least three emergency psychiatric hospitalizations and an attempted suicide.
 {¶ 33} The therapist who conducted the assessment on behalf of the court indicated that during the interview John was cooperative and "did not appear to deliberately lie or falsify his reporting." The therapist further reported that John "had difficulty at times understanding questions." Considering all of this information that counsel and the court had in the assessment coupled with John's youth, low IQ and mental problems, there were "sufficient indicia of incompetence." A competency evaluation should have been requested by counsel and ordered by the court.
 {¶ 34} Based on the preceding, there was more than sufficient evidence of "manifest injustice" to mandate the withdrawal of John's admission of guilt.
[1] From the bits and pieces gleaned from the scanty record, it appears John was accused of raping an older boy who was also in detention. This boy had been charged with rape as well. Evidently, the incident occurred while both boys were in the restroom together. The record does not reveal why either boy was allowed in the restroom at the detention center unsupervised, let alone together.
[2] Interestingly enough, although John was charged with forcible rape, there was a specific finding in the offender risk assessment that "there were no threats of or use of violence or weapons during sexual offense." Also, counsel at sentencing indicated that John was very small for his age and pre-pubescent. There was no indication in the record how John forced the other boy to comply.
[3] Despite the fact that John indicated that he had not raped the other minor prior to sentencing and, thus, prior to his transfer to the Department of Youth Services, the trial court, nonetheless, at the hearing on his motion to withdraw his admission and in its journal entry, indicated John had only professed his innocence upon arriving at D.Y.S. The record completely belies this finding.
[4] John takes several medications, Risperdal, Clonidine, and Depahene.